State v. McMahill.

---

# THE STATE v. A. B. McMAHILL, Appellant.

### Division Two, November 24, 1908.

1. **APPELLATE JURISDICTION: Felony Case.** Where the prosecution is for the commission of a felony, the appeal is to the Supreme Court, although by the verdict defendant's punishment is assessed at a fine of one hundred dollars.

2. **PRESENCE OF DEFENDANT: Proof.** It devolves upon the State to prove that defendant was present at the time and place of the shooting, but this fact, like any other in the case, may be shown by facts and circumstances. It is not necessary that it be proven by direct and positive testimony. And the weight of such evidence is for the jury.

3. ———: ———: **Sufficient.** The prosecuting witness's father had rented land from the defendant, and raised a crop of corn thereon, and they had recently had a lawsuit over some wheat. About two weeks before the shooting, the father met defendant on the road and told him he would send his boys in a short time to gather the corn, and thereupon defendant said, "I give you warning right now to stay off of that place, you and your boys; if you don't, you will take the consequences." The three boys went to the field to gather the corn, and as the prosecuting witness was returning with a load and was in the public road near defendant's house, someone fired a shot at him, some of the shots striking the witness and others the wagon. He looked up and saw smoke near the northwest corner of the house, but did not see the person who had fired the shot. He drove on and when about opposite the southwest corner of the house another shot was fired, the shots scattering around him, and again he saw the smoke near the house, but did not see the gun or defendant. He drove home, then returned to the field and told the other boys he had been shot at, and as they approached defendant's house, about forty-five minutes after the other shots had been fired, they saw defendant standing near his house with a shot-gun in his hands, and fearing trouble they drove back. *Held,* that the evidence tends to show that defendant fired the shots, and is sufficient to sustain the verdict.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Crawley & Rucker* for appellant.

In order to convict, the prosecution was bound to prove that the accused was present at the time and place of the alleged shooting. State v. Taylor, 118 Mo. 153; State v. Howell, 100 Mo. 28; State v. Wollard, 111 Mo. 248; State v. Lewis, 69 Mo. 92; 1 Bish., Crim. Pro. (3 Ed.), sec. 1062; Wharton, Crim. Ev., sec. 333. There is not a scintilla of evidence tending to show appellant's presence at the place of the shooting at or before the time of its occurrence. The lack of this essential link cannot be supplied by inferences or conjectures drawn from the mere fact of his presence there forty-five minutes later. State v. Morney, 196 Mo. 50.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

In criminal cases the Supreme Court will not weigh the evidence where there is sufficient evidence, if believed by the jury, to justify their verdict of conviction. State v. Richmond, 186 Mo. 71; State v. Smith, 190 Mo. 706; State v. Urspruch, 191 Mo. 43; State v. Tetrick, 199 Mo. 100; State v. Williams, 199 Mo. 137. When the evidence is circumstantial, the weight of it is for the consideration of the jury. State v. Delcore, 199 Mo. 228.

BURGESS, J.—This is an appeal from a verdict and judgment of the Chariton Circuit Court convicting the defendant of felonious assault with intent to kill one Sam Staples, and assessing his punishment at a fine of one hundred dollars. The appeal was improperly taken to the Kansas City Court of Appeals, from which it has been transferred here, for the reason that said court was without jurisdiction, the prosecution being for the commission of a felony.

The defendant, by his counsel, expressly waives and withdraws all objections made and exceptions saved at the trial, save his exception to the action of the court in refusing to give a peremptory instruction, asked by him, directing an acquittal on the ground of insufficient evidence.

The facts disclosed by the record are, in substance, as follows:

The defendant and the prosecuting witness, a boy of about eighteen years, were neighbors living on adjoining farms in Chariton county. J. S. Staples, father of the prosecuting witness, had rented a piece of land from the defendant, and had put in a crop of corn. There was considerable ill-feeling between the parties, resulting from a lawsuit over a crop of wheat raised by Staples on ground rented from the defendant. Some two or three weeks before the shooting, J. S. Staples met the defendant upon the public road, and told him that he would send his boys to gather the corn crop in a short time, whereupon the defendant said, "I give you warning right now to stay off that place, you and your boys; if you don't you will take the consequences."

On November 29, 1907, Sam Staples and his two brothers, Alex and James, also Frank Mason, all knowing of the threat which had been made by the defendant, started to gather and haul away said corn. The only convenient way by which to enter or leave the corn field was by a road which led by the defendant's house. About four o'clock that evening, Sam Staples, the prosecuting witness, started homeward from the field, his wagon loaded with corn. He was sitting behind the bump board in the wagon, and when near the defendant's house some one fired a shot at him. The shot struck the bump board, which concealed and protected his body, a few of the shot going through a crack in the board, penetrating his clothing and

blistering his back.  When this shot was fired, Sam got up, looked around and saw smoke near the northwest corner of defendant's house, but did not see the person who fired the shot.  He drove on, and when about opposite the southwest corner of the house a second shot was fired at him, the shot scattering around him.  Again he saw smoke near the defendant's house, but failed to see the gun or the person who shot it. The reports of these shots were heard by Frank Mason who was working in the cornfield.  Sam drove home, armed himself with a shotgun, mounted a horse, went back to the field and told the other boys that he had been shot at by the defendant.  Soon afterwards the boys started from the field with another load of corn, and when they had approached within a hundred yards of the defendant's house Sam Staples and Frank Mason saw the defendant standing near his house, with a shotgun in his hands, and, fearing trouble, they turned the team aside and went home another way, by passing through a fence dividing the field from Mr. Staples' land.  It appears from the evidence that about forty-five minutes had elapsed between the time the shots were fired and the time the defendant was first seen by the prosecuting witness and Frank Mason.  On their way home, and when about a half mile distant from the defendant's home, the boys looked back and saw a man whom they supposed was the defendant standing near his house.  These are all the facts of any consequence discovered by the testimony.  According to his own testimony, the only reasons which the prosecuting witness had for thinking that the defendant was the person who shot at him were that the defendant had made threats, and he, the prosecuting witness, did not know anybody else in the country that would want to shoot him.

It may be conceded, as contended for the defendant, that in order to convict the defendant of the crime

charged against him, it devolved upon the State to prove that he was present at the time and place of the shooting; but this, like any other fact in the case, could be shown by facts and circumstances, if sufficient. It is not at all necessary that it be proven by direct and positive testimony. Now, at the outset, it appears that there was ill-feeling between the family of J. S. Staples, father of Sam Staples, and the defendant, growing out of a lawsuit; that about two weeks before the shooting, J. S. Staples met the defendant upon the public road and told him that he would send his boys to gather the corn crop in a short time, and that the defendant replied, "I give you warning right now to stay off that place, you and your boys; if you don't you will take the consequences." This threat made by the defendant, and the fact of the existence of animosity between him and the Staples family, taken in connection with the other facts in evidence, especially the time and place of the shooting, and the presence of the defendant, with a gun in his hand, near the place from which the shots were fired, forty-five minutes after the shooting occurred, tend to show, we think, that the defendant is guilty as charged.

State v. Morney, 196 Mo. 43, cited by the defendant, was not nearly so strong a case for the State as the case in hand. In that case there was no proof of threats or ill-will on the part of the defendant toward the owner of the property which was burned, nor proof that he was in the vicinity for many hours before the fire occurred.

Our conclusion is that there was ample evidence to take the case to the jury, who were the sole judges of its weight, and the court having approved of the verdict we are not inclined to interfere.

The judgment is affirmed. All concur.