STATE OF MISSOURI, RESPONDENT, v. ROY STEWART ET AL.—63 S. W. (2d) 210.

Kansas City Court of Appeals. September 11, 1933.

No brief for State.

*John E. Heffley* and *K. D. Cross* for appellants.

*R. B. Bridgeman*, of former Counsel, for appellants.

REYNOLDS, C.—At the May Term, 1931, of the circuit court of Holt County, Missouri, the defendants were jointly charged by information filed by the prosecuting attorney of said county with playing at a certain game of chance commonly called "rumme" with cards for money. On the twentieth day of May, 1931, during said term, the case was tried, resulting in a verdict of guilty as to each of said defendants and the assessment of a fine of forty dollars each against them by the jury. The information is under Section 4303, Revised Statutes 1929, and is as follows: (Omitting caption) "Comes now James H. Pettijohn, Prosecuting Attorney within and for the county of Holt, in the State of Missouri and informs the court that Roy Stewart, John King, Gug Housewirth, Lester McNemee, Harold Rostock, and Harold Sipes, on the 24th day of April, 1931, at said County of Holt, did then and there unlawfully play a game of chance, commonly called "rumme," for money, with a gambling device, to-wit, a pack of cards used and adapted for the purpose of playing games of chance for money and property, against the peace and dignity of the State."

The section of the Statute upon which the information is based provides: "If any person shall play at any game whatsoever for money, property or gain with cards, dice or any other device which may be adapted to and used in playing any game of chance or in which chance is a material element or shall bet or wager on the hands or cards or sides of such as do play as aforesaid, every such person shall be deemed guilty of a misdemeanor, and upon conviction be punished by a fine of not less than twenty-five nor more than two hundred dollars."

The evidence for the State is based entirely on the testimony of Sheriff Gelvin of Holt County and of his deputies, Graham and Lacy. Gelvin testified that on the twenty-fourth day of April, 1931, together with his deputies, he visited the Rostock shop or building, situate just across the street east of the court house in Oregon in Holt County where he found the six defendants, appellants herein; that he approached the building and, reaching the front door, saw the defendants through a large glass in the door sitting at a table inside with ordinary playing cards in their hands and with cards and money upon the table before them; that he took hold of the door and, finding it locked, told the defendants to open it; that he broke the glass in the door and one of his deputies reached in and unlocked it and he and his deputies entered the room; that the defendants at that time were grabbing for the money upon the table and knocked some of it off on the floor and he picked up some of the same; that he also found common playing cards in the room; that, as he and his deputies entered the room, one of the defendants threw something to the floor; that the time of his visit was around seven o'clock in the evening. He further testified that he did not see any of the defendants lay or play any card upon the table, nor did he see any defendant bet any money upon any game, nor did he see any money change hands. His deputies testified practically to the same effect. There was no evidence that the game, if any, being played, was "rumme" or what was commonly known as "rumme," nor was it otherwise characterized. Upon the part of defendants, defendants Housewirth and Sipes were sworn as witnesses; and each gave evidence denying that any money was bet by any of defendants or that any game was played by any of them for money. They further testified that four of them were engaged in a game, without any money being placed or bet thereon, and that two of the defendants had not played at all. One of said defendants, however, upon cross-examination, spoke of the money on the table.

At the close of the State's case, the defendants requested an instruction directing a verdict of not guilty, which was refused by the court, and again at the close of all the evidence asked a similar instruction which was refused. The court, thereupon, at the request of the State, gave instructions numbers 1-4 inclusive and refused instruction marked "A" asked by the defendants and submitted the case to the jury.

In the instructions given by the court, the court told the jury that, if it should find from the evidence that defendants played a game of chance with cards for money, they should find defendants guilty as charged in the information without requiring that it should also find from the evidence that the game so played was "rumme" or what was commonly known as "rumme."

In the instructions given, the court submitted the case to the jury

on the theory that, if it found from the evidence that defendants played at any game of chance with cards for money, it was sufficient to authorize a verdict of guilty, as charged in the information, without regard to whether the evidence showed it to be a game of "rumme" or a game commonly called "rumme" as charged therein.

Defendants by their refused instruction "A" sought to have the court require the jury to find from the evidence that the game played, if any, was "rumme" or what was commonly called "rumme" before it could convict the defendants. This theory was rejected by the court.

The jury returned a verdict of guilty as charged in the information as to each defendant. In due time, defendants filed a motion for a new trial, which was overruled by the court; and judgment thereupon was pronounced against them upon the verdict, from which they have duly appealed to this court.

1—The appellants have filed a brief herein, assigning numerous errors upon the trial relating chiefly to the giving and refusing of instructions and to the insufficiency of the evidence to support the charge made in the information and the verdict and to the insufficiency of the allegations of the information to constitute a valid charge against them. The respondent has not favored us with a brief.

2—It is complained that the information having charged the defendants with unlawfully playing a game of chance with cards commonly known as "rumme" for money should have further alleged a description of the game of "rumme," sufficiently to show that it comes within the prohibition of the statute. Section 4303 of the statute, under which the information is filed, provides: "If any person shall play at any game whatsoever for money—with cards, dice, or any other device which may be adapted to or used in playing a game of chance—shall be deemed guilty of a misdemeanor." The information is, therefore, sufficient. If the device used had been something different from cards or dice, it doubtless would be required that it make some allegation respecting it to show that it was within the statute. [State v. Maupin, 71 Mo. App. 54.]

3—The appellants contend that the evidence is insufficient to authorize a verdict against them because, first, there was no evidence to sustain the charge as made, that they played at a game, commonly known as "rumme," or that there is any such game, and, second, there was no evidence to show that they were engaged in any game whatever for money.

4—It must be conceded that the evidence fails to show that the game played, if any, was what is commonly known as "rumme;" and, if after having charged the game as being a game commonly called "rumme" the State was required so to prove it, then defendants' contention upon this point must be held good, even though the evidence might be sufficient to show that defendants were engaged in

some game of cards for money. A consideration of all the evidence in the record, both that introduced by the State and that by the defendants, is sufficient to show that defendants were engaged in a game of cards for money. It may be doubted whether that of the State alone is sufficient; but, with the evidence of the witnesses testifying in behalf of defendants, there is sufficient evidence in the record to show such facts. There was no direct evidence in the State's evidence showing that defendants actually engaged in playing cards or that the money upon the table had been bet by defendants or belonged to any of them. That the defendants played cards was a matter of inference; and that the money upon the table had been bet by defendants was a matter of inference, the latter inference being based upon the former; and it is not permissible to build up a case in such manner, that is by building one inference upon the other. [State v. Lackland, 136 Mo. 1. c. 33.] However, the defendants testifying gave evidence that four of them were engaged in a game of cards, thus establishing by direct evidence that which before had been an inference, that a game of cards was played and, from which a reasonable inference might be drawn from all the circumstances in evidence, was played for the money upon the table before them. It is true that the defendants testifying denied that the game played was for money or that any money was bet by any of the defendants or any game was played by them for money. However, the jury was not bound to accept said latter statements as true; the jury had the right to accept part of their testimony as true and the right to reject the other part as untrue, accordingly as it believed the same to be true or false. The evidence showed that the door to the room was locked and defendants seated about the table and, when the door was open by the sheriff and the room entered by him, the defendants grabbed at the money upon the table. The circumstances are meagre but are ample to show as stated that defendants played a game with cards for money; but the particular game at which they played is not shown by any designated name, as poker or euchre or "rumme." The evidence is silent as to the name of the particular game. It was not shown to be the game commonly called "rumme." There was an entire failure of proof on such question. Yet, the jury was told by instruction 3 for the State that it might find defendants guilty as charged in the information if it believed from the evidence they were engaged in a game of chance with cards for money; and the jury did, by its verdict, find defendants guilty as charged in the information, that is of playing at the game commonly known as "rumme" without any evidence to support such finding. The court could not take judicial notice of what a game of "rumme" is or that there is a game of chance with cards commonly known as "rumme." The State had charged that the game played was what is commonly known as "rumme;" and, with-

out some evidence as to what a game commonly known as "rumme" is, the court could not tell whether or not the evidence in the record was an immaterial variance from the evidence required to sustain the charge as made. A variance has application where the proof does not strictly conform to the description of the matter alleged in the information. [State v. Plant, 209 Mo. l. c. 314.] It is not recognized as a variance where there is a failure of proof as to the description of the matter alleged in the information. [State v. Plant, supra.] In the case of State v. Wade, 267 Mo. 249, the defendant was charged with setting up and keeping a certain table and gambling device commonly called a crap table; and it was therein held that, having so charged, it was incumbent upon the State to show that there was a table commonly known as a crap table and that it was such particular kind of table that defendant had set up and kept.

5—Where a person or thing, necessary to be charged in the information, is described with particularity and minuteness, although not necessary to be so done, it becomes necessary to prove the description as alleged; and any material variance is fatal. [State v. Smith, 31 Mo. 120; State v. Fay, 65 Mo. 493; States v. Moore, 178 Mo. 348; State v. Wade, 267 Mo. 249; State v. Rhodes, 35 Mo. App. l. c. 360; State v. Young, 163 Mo. App. l. c. 98.] In this case, it was necessary to charge defendants with playing cards, and the information so charging further charged by way of description and identification that the particular game being so played was what is commonly known as "rumme." The trial court was not, under the authorities cited, authorized to reject such allegation as to "rumme" or to treat it as immaterial. Such allegation was required to be proved, as any other allegation of the information; and, if the proof with respect thereto in the opinion of the court was a slight or immaterial variance from that required, it might still be regarded as proven, under Section 3562, Revised Statutes 1929. But, where the proof discloses something entirely different from that charged, the variance is fatal; and Section 3562, aforesaid, does not cure it. [State v. Wade, 267 Mo. 249; State v. Moore, 178 Mo. 348.] Or, where there is an entire failure of proof, such failure is fatal; and said section has no application because in such case, no question of variance arises and variance has no application. [State v. Plant, 209 Mo. l. c. 314.] There being no evidence in this case as to whether there is a game commonly known as "rumme," or what a game of "rumme" is, or how it is played, there is, therefore, nothing upon which a variance can be based. It is a clear case of entire failure of proof.

What has been said necessarily disposes of this appeal, and it becomes unnecessary to discuss other errors assigned upon the trial. It follows from the views herein before expressed that the court erred in denying defendants' request at the close of all the evidence for an instruction directing the jury to return a verdict of not guilty,

and in submitting the case to the jury on instruction 3 for the State; and, for such reasons, the judgment should be reversed; and, in order to enable the State, if so advised, to again place defendants upon trial, it should also be remanded, all of which is accordingly recommended. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed and remanded. All concur.